| | | |
|---|---|---|
| DIANE CHOROSEVIC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:05-CV-2394 CAS |
| | ) | |
| METLIFE CHOICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion to certify this litigation as a class action.

[Doc. 114]  Because plaintiffs have failed to meet their burden of establishing the requirements of

Rule 23(a) of the Federal Rules of Civil Procedure, the Court will deny plaintiffs' motion for class

certification at this time.

### I.  Background

#### A.     The Parties

Plaintiff Lawrence and Diane Chorosevic, husband and wife, bring this action on behalf of

themselves and others similarly situated.  Diane Chorosevic was employed by General American, a

wholly owned subsidiary of defendant Metropolitan Life Insurance Company ("MetLife").  As an

employee, Mrs. Chorosevic and her husband were and are eligible to participate in the MetLife

Employee Welfare Plan (referred to hereinafter as "MetLife Choices" or "the Plan"), which is an

employee welfare benefit plan under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001, et seq.[1]

---

[1]ERISA defines an "employee welfare benefit plan" as:

> any plan, fund,  or program which was heretofore or is hereafter established or

The Plan provides group benefits, including health insurance. While MetLife is the plan administrator of MetLife Choices, MetLife has entered into an administrative services agreement with United Healthcare Service, Corp. ("UHC"), under which UHC is to provide benefits and claims administration to the Plan. United Healthcare Insurance Company ("UHIC"), is the named claims administrator of MetLife Choices.[2]

Both Diane and Lawrence Chorosevic are participants of and receive health insurance benefits under the Plan. Lawrence Chorosevic, however, also has health insurance through a plan issued by Blue Cross and Blue Shield of Missouri ("BCBS"), which is the primary insurer for Mr. Chorosevic. When a claim for medical benefits is made by Mr. Chorosevic, BCBS is obligated to pay first. MetLife Choices is Mr. Chorosevic's secondary insurer.

### B.    Applicable Plan Language and Plaintiffs' Allegations

Plaintiffs challenge the method by which UHIC and MetLife have calculated secondary medical benefits under the Plan. MetLife Choices' summary plan description ("SPD") provides that after a person's primary insurer has paid benefits on a claim, UHIC "adjusts benefits" so that "total reimbursement from all plans is no more than the total allowable expenses." See 2003 MetLife

---

maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). 29 U.S.C. § 1002(1).

[2]Plaintiffs have not named UHC as a defendant, and the allegations in the complaint are against UHIC.

Choices SPD, attached to plaintiffs' memorandum in support of class certification as Exhibit E at OI-31. Then "the amount by which the MetLife's plans benefits have been reduced," (in other words, what the Plan saved by being the secondary as opposed to the primary insurer), "shall be used by the MetLife Plan to pay allowable expenses not otherwise paid, which were incurred [by the claimant] during the calendar year." Id. The parties refer to this method of calculating secondary benefits as the "come-out-whole" coordination of benefits, with a benefits reserve.

The allegations in plaintiffs' complaint relate to the manner in which defendants handled Mr. Chorosevic's claims. Plaintiffs allege defendants failed to comply with the terms of the Plan in two principal ways. First, plaintiffs allege defendants used the incorrect preferred provider discount rates when determining the amounts MetLife Choices saved by virtue of being the secondary plan. According to plaintiffs, in administering the Plan, UHIC used the preferred provider rates negotiated by the primary insurer when those rates were more favorable to UHIC than the preferred provider rates it had itself negotiated. This is significant, plaintiffs maintain, because by using the lower preferred provider rates, UHIC undervalued how much the Plan had saved by being the secondary insurer. Consequently, when UHIC used the lower preferred provider rates, there were less credits available for the person's out-of-pocket allowable expenses.

Second, plaintiffs allege that no matter how the reserves were calculated, defendants never credited Lawrence Chorosevic or other persons who used the Plan for secondary insurance for allowed out-of-pocket expenses during any applicable calendar year. Plaintiffs maintain defendants' actions were systematic, and their deliberate miscalculations were masked for most persons because defendants sent out confusing and even misleading explanations of benefits ("EOB").

### C. Amendment to the MetLife Choices Plan

Effective January 1, 2006, MetLife Choices was amended to change its method of coordinating secondary benefits from a come-out-whole method, with a benefits reserve, to what the parties refer to as a "non-duplication" method, without a benefit reserve. Under the new method of coordinating benefits, if the primary plan provides benefits at a level equal to or greater than those allowed under MetLife Choices, the Plan pays nothing, unless the member has reached his or her out-of-pocket limit. Furthermore, the money MetLife Choices saves by being a secondary insurer is not placed in a reserve to be used for the member's allowed out-of-pocket expenses. The parties agree the non-duplication method of coordinating benefits is less favorable to plan members than the come-out-whole method. Plaintiffs have not alleged defendants are miscalculating benefits under the new non-duplication method or that defendants are currently sending out misleading EOBs under the MetLife Choices Plan.

### D. Plaintiffs' Claims

Plaintiffs filed a three-count complaint against MetLife Choices, MetLife, UHIC and United HealthCare affiliates of various states and regions ("UHIC Affiliates"). In Count I, plaintiffs seek to recover benefits under ERISA section 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(b), as a result of defendants' alleged miscalculation of and failure to pay secondary medical benefits. In Counts II and III, plaintiffs allege defendants breached their fiduciary duties under ERISA sections 502(a)(3), 29 U.S.C. § 1132(a)(3), and 502(a)(2), 29 U.S.C. § 1132(a)(2), respectively, by failing to properly calculate and pay secondary medical benefits. Plaintiffs seek to certify all three counts as a class action and allege defendants have systematically and purposely miscalculated benefits for all persons who use or have used a MetLife and/or UHIC administered welfare benefit plan for secondary

insurance.  For relief plaintiffs seek monetary damages, an accounting of profits, prospective injunctive relief, other equitable remedies, as well as attorneys' fees, costs, and interest.

### E.    The Proposed Class

Plaintiffs seek to represent, on all three counts, a class consisting of:

All Members (including subscribers, participants and beneficiaries) of ERISA-covered health plans (a) whose plans are controlled, underwritten or administered (including the administration of claims) by United Healthcare Insurance Company or its affiliates or subsidiaries or The Metropolitan Life Insurance Company or its affiliates or subsidiaries; (b) for whom such plan was a secondary plan; and (c) where the applicable plan description provided that the amount by which such plan's benefits have been reduced shall be used by such plan to pay allowable expenses not otherwise paid which were incurred during the calendar year or claim determination period by the person for whom the claim is made;

The geographic scope of the class is limited to the United States.  The temporal scope of the class is June 30, 1995, to the date of certification.

Excluded from the class are all officers and directors of the Defendants and their subsidiaries and affiliates, any law firm of record in this matter and their employees and immediate families; and any Judge conducting any proceeding in this action and members of the Judge's immediate family.

Both parties admit plaintiffs' proposed class, as currently written, would encompass thousands of plans across the nation.[3]

## II.  Preliminary Issues

### A.    Diane Chorosevic's Standing as a Plaintiff

As an initial matter, a prerequisite to class certification is that "it must be established that the proposed class representatives have [Article III] standing to pursue the claims as to which classwide

---

[3]In an attempt to address some of the issues raised by defendants in their joint memorandum in opposition to plaintiffs' motion for class certification, plaintiffs amended their class definition in their reply brief.  See Plaintiffs' reply memorandum at 8-9.  It is this revised class definition the Court has employed here.

relief is sought." <u>Wooden v. Board of Regents of Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1287 (11th Cir. 2001). <u>See also</u> <u>McClain v. American Econ. Ins. Co.</u>, 424 F.3d 728, 731 (8th Cir. 2005). Individual Article III standing is a prerequisite for all actions, including class actions. <u>O'Shea v. Littleton</u>, 414 U.S. 488, 494 (1974). A plaintiff must have standing to pursue "each form of relief sought." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.</u>, 528 U.S. 167, 185 (2000).

Nowhere in the complaint, motion for class certification, supporting memoranda, or exhibits attached thereto is there evidence of or an allegation that Mrs. Chorosevic used or currently uses a MetLife or UHIC administered plan as secondary insurance. It appears, therefore, Mrs. Chorosevic has not suffered the injuries alleged in the complaint regarding defendants' failure to properly calculate and pay secondary medical benefits. Accordingly, Mrs. Chorosevic has no standing to sue. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.") (citations omitted).

Furthermore, because Mrs. Chorosevic is not a "subscriber, participant, or beneficiary" of a plan "controlled, underwritten or administered" by UHIC, MetLife, or their affiliates or subsidiaries "for whom such plan was a secondary plan," she would not fall within the definition of the proposed class. Plaintiffs' reply memorandum at 8-9. As a named representative, Mrs. Chorosevic must be or have been a class member. <u>East Tex. Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members"); <u>Sosna v. Iowa</u>, 419 U.S. 393, 403 (1975); <u>Bailey v. Patterson</u>, 369 U.S. 31, 32 (1962); <u>McClain</u>, 424 F.3d at 733 (dismissing plaintiffs' claims because they were not members of the plaintiff class defined in the complaint). As Mrs. Chorosevic does not have

Article III standing and cannot proceed as representative plaintiff for a class in which she is not a member, the Court will not consider the qualifications of Mrs. Chorosevic when evaluating the class requirements of Federal Rule of Civil Procedure 23.

### B.    *Standing as to Claims for Prospective Relief*

A plaintiff must not only have standing to pursue the claims asserted in the complaint, but he or she must also have standing to assert the relief requested. City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief); see also Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross.")  Defendants do not dispute Mr. Chorosevic has standing to pursue his damage claims, but they aver he no longer has standing to ask for prospective injunctive relief because the terms of the Plan have been amended.

To have Article III standing to seek prospective relief, a plaintiff "must show [he is] likely to suffer future injury that will be remedied by the relief sought." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006) (citing James v. City of Dallas, 254 F.3d 551, 563 (5th Cir. 2001)). See also Mosby v. Ligon, 418 F.3d 927, 933 (8th Cir. 2005) (affirming dismissal because the plaintiff did not face immediate threat of ongoing or future injury); Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037 (8th Cir. 2000) (holding the plaintiff failed to sufficiently allege a threat of ongoing or future harm). "'Past exposure to illegal conduct' is not enough absent present adverse effects." Elizabeth M., 458 F.3d at 784 (quoting City of Los Angeles, 461 U.S. at 102; Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 108-09 (1998)).

For prospective relief, plaintiffs seek "an injunction prohibiting defendants from using an improper method to calculate benefits in the future and requiring defendants to correct the method of

calculating benefits going forward." <u>See</u> Complaint at 16. Plaintiffs also seek "an injunction prohibiting the Defendants from issuing misleading explanation of benefits." <u>Id.</u> The Court finds the changes to the Plan moot both of these requests for future relief. Mr. Chorosevic's secondary benefits under the MetLife Choices Plan are no longer calculated using the come-out-whole method of coordinating benefits, and plaintiffs do not allege defendants are currently miscalculating benefits under the new non-duplication method that went into effect on January 1, 2006. Accordingly, Mr. Chorosevic is no longer under the threat of future injury that could be remedied by the injunctions plaintiffs are seeking.

Plaintiffs argue their claims for prospective injunctive relief are not moot because it was defendants who voluntarily amended the Plan, and defendants could "revert to their old ways" by amending the Plan once again. <u>See</u> Plaintiffs' reply memorandum at 31. The Court does not find this argument persuasive. First, the Court has no reason to believe the amendment was improper, as plaintiffs do not argue defendants did not have the authority to change the Plan as they have done, although plaintiffs do contend the amendment was in response to this litigation. Second, plaintiffs do not allege defendants are currently violating the terms of the Plan by miscalculating secondary benefits. Finally, the Court finds defendants have no incentive to recommence their alleged misconduct. Plaintiffs admit the non-duplication method affords persons the least favorable amount of benefits. Thus, it is improbable that, in the absence of an injunction, defendants would amend the Plan back to the more expensive come-out-whole method of calculating secondary benefits, and revert to miscalculating benefits as alleged. It strikes the Court more as likely that defendants will maintain the more profitable non-duplication method of calculating secondary benefits under the Plan.

The current situation is simply not analogous to the cases cited by plaintiffs. For example, in

Steele v. Van Buren Public School District, 845 F.2d 1492 (8th Cir. 1988), the plaintiff challenged a practice of prayer in public school. There, the school district voluntarily stopped the practice of prayer in school and argued the plaintiff's claims were thereby mooted. Id. at 1494. The district court and Eighth Circuit found the school district's disavowal of school prayer was not sufficient to moot the case because the defendant was "free to return to [its] old ways," as there was no incentive for the school district to keep in place the no-prayer policy. Id. Here, defendants' own self-interests will, in all likelihood, dissuade defendants from reverting to their more costly "old ways of doing business." Furthermore, in the Steele case the Eighth Circuit held "a public interest in having the legality of the practice settled, militates against a mootness conclusion." Id. The same public interest is not present in the current case.

The other case cited by plaintiffs, Deposit Guaranty National Bank, Jackson, Mississippi v. Roper, 445 U.S. 326 (1980), is also not analogous to the case at hand. There, plaintiffs, who were credit card holders, sued the defendant on behalf of themselves and similarly situated credit card holders for damages as a result of alleged unlawful finance charges. Id. at 328. Following the denial of class certification, the defendant tendered to each named plaintiff the maximum amount that each could have recovered, but plaintiffs refused to accept the tender. Id. at 329. The District Court, over plaintiffs' objections, then entered judgment in their favor on the basis of the tender and dismissed the action. Id. at 330. The Supreme Court ruled the tender offers and judgment, both made over plaintiffs' objections, did not moot the appeal of the denial of class certification. Id. at 337. In the present suit, defendants did not attempt to "buy off" plaintiffs' claims through settlement, rather they amended the Plan for all members, which it appears they had the authority to do.

Because Mr. Chorosevic no longer suffers the harm he alleges, and it is unlikely he will suffer

such harm in the future, he does not have standing to pursue prospective injunctions on behalf of himself or the proposed class. Elizabeth M., 458 F.3d at 784 (holding plaintiffs, who were no longer residents, did not have standing to sue for injunctive relief on behalf of present and future residents of the mental health facility). See also City of Los Angeles, 461 U.S. at 109 (plaintiff with claim for damages could not pursue or represent plaintiffs for injunctive relief where it was unlikely he would be subjected again to police brutality); Smook v. Minnehaha County, 457 F.3d 806, 817 (8th Cir. 2006) (finding named representative and, therefore, class certified by the district court lacked standing to seek injunctive relief); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436 (8th Cir. 1999) (holding because plaintiff sold her business she lacked standing to pursue injunctive relief on behalf of the proposed class of store owners).

### C.       *Standing as to Claims Against Subsidiary Defendants*

There is an additional standing issue because plaintiffs have named entities as defendants with which they have had no dealings. As the Eighth Circuit has made clear, where there is no contact with a defendant, there is no injury-in-fact and, ergo, no standing as to that named defendant. McClain, 424 F.3d at 732 (plaintiffs cannot establish standing without showing a "direct contact" between the plaintiffs and the named defendant); Canady v. Allstate Ins. Co., No. 96CV0174, 1997 WL 33384270, *8 (W.D. Mo. June 19, 1997), aff'd, 162 F.3d 1163 (8th Cir. 1998) ("plaintiffs lack standing to bring claims against defendants against whom they have alleged no direct injury.")

Here, plaintiffs are participants of MetLife Choices – a plan administrated and sponsored by MetLife and UHIC. There are no allegations or evidence that plaintiffs have had contact with the other named defendants, the UHIC Affiliates. Therefore, based on the record before the Court, neither plaintiff can pursue claims against the UHIC Affiliates because plaintiffs cannot have suffered injury

as a result of these defendants' alleged misconduct. The Court will not consider the presence of the UHIC Affiliates in evaluating the issue of class certification, because for each named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant. <u>Henry v. Circus Circus Casinos, Inc.</u>, 223 F.R.D. 541, 543 (D. Nev. 2004).[4]

In light of these standing issues, when deciding class certification the Court will only consider plaintiff Lawrence Chorosevic's claims against MetLife Choices, MetLife, and UHIC, and his ability to pursue damages and non-prospective equitable relief on behalf of a class.

### III. Class Action Standard

The class action is an "exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." <u>General Tel. Co. S.W. v. Falcon</u>, 457 U.S. 147, 155 (1982) (quotations omitted). In order to obtain class certification, plaintiffs have the burden of showing that the requirements of Rule 23 of the Federal Rules of Civil Procedures are met. <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994); <u>Bishop v. Committee on Prof'l Ethics & Conduct of the Ia. State Bar Ass'n</u>, 686 F.2d 1278, 1288 (8th Cir. 1982). Specifically, plaintiffs must meet the prerequisites of Rule 23(a) and one additional set of alternative requirements under Rule 23(b). <u>Alpern v. UtiliCorp United, Inc.</u>, 84 F.3d 1525, 1539 (8th Cir.1996); <u>Morgan v. United Parcel Serv. of Am., Inc.</u>, 169 F.R.D. 349, 354 (E.D. Mo.1996). In determining whether to certify a class, the question before the Court "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met." <u>Wakefield v. Monsanto Co.</u>, 120 F.R.D.

---

[4]In their proposed class, plaintiffs also include plans "controlled, underwritten or administered" by Metlife's affiliates or subsidiaries. Plaintiffs, however, have not named MetLife affiliates or subsidiaries as defendants in this action. And, even if they had, there is nothing to suggest either plaintiff would have claims against such defendants.

112, 115 (E.D. Mo. 1988) (quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 (1974)).  The district court is given wide discretion when determining whether to certify a class action.  Coley v. Clinton, 635 F.2d 1364, 1378 (8th Cir. 1980); Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis, 143 F.R.D. 216, 219 (E.D. Mo. 1992).  A class action, however, cannot be certified unless the trial court is satisfied, "after a rigorous analysis," that the prerequisites of Rule 23 have been satisfied.  General Tel., 457 U.S. at 161.

When conducting its Rule 23 analysis, the Court is to accept the substantive allegations in plaintiffs' complaint as true.  Mathers v. North Shore Mining Co., 217 F.R.D. 474, 483 (D. Minn. 2003).  But because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  General Tele., 457 U.S. at 160 (citations omitted).  See also Walker v. World Tire Corp., Inc., 563 F.2d 918, 921 (8th Cir. 1977) ("[t]he District Court must have before it sufficient material to determine the nature of the allegations, and rule on compliance with the Rule's requirements[,]" such a determination "can seldom be determined on the basis of the pleadings alone.") (citations omitted).

### IV. Rule 23(a) Requirements

Federal Rule of Civil Procedure 23(a) allows plaintiffs to sue as representative parties on behalf of a class only if they meet four threshold requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a);

see also Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1004 (8th Cir. 2004). The Court will address the requirements of Rule 23(a) in reverse order.

### A.    *Adequacy of Representation*

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement encompasses two distinct factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." U.S. Fidelity & Guar. Co. v. Lord, 585 F.2d 860, 873 (8th Cir.1978). See also Paxton v. Union Nat'l Bank, 688 F.2d 552, 562-63 (8th Cir. 1982) ("[t]he focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.")

As discussed above, Mrs. Chorosevic is an inadequate representative of this class. Not only does she have no injury or threat of future injury, she is not even a member of the proposed class. As for Mr. Chorosevic, he too has standing issues, which are addressed in the preceding section. Mr. Chorosevic cannot pursue claims for prospective injunctive relief because the Plan in which he is a participant and receives secondary benefits has been amended so that defendants' alleged wrongdoings as to the miscalculation of secondary benefits are no longer ongoing. Furthermore, he has no claims against the named defendants, other than the MetLife Choices, MetLife, and UHIC. Because a class representative must be part of the class and possess the same interests and suffer the same injury as the class members, Mr. Chorosevic would be an inadequate class representative for persons in other plans that currently use the come-out-whole method of calculating secondary medical benefits, and who are likely to suffer future injury by the alleged miscalculation of secondary benefits under these plans.

13

Alpern, 84 F.3d at 1540. Mr. Chorosevic is also an inadequate representative for persons of plans "controlled, underwritten or administered" by entities other than MetLife or UHIC – namely the UHIC Affiliates. See Henry, 223 F.R.D. at 543.

The Court, however, finds Mr. Chorosevic would be an adequate representative for those persons who received secondary benefits under the MetLife Choices Plan and were injured by defendant's alleged violations of that Plan.[5] His interests would be aligned with such persons and, at this time, the Court is not aware of any defenses that would be unique to Mr. Chorosevic. The Court is also satisfied, at this time, that Mr. Chorosevic's counsel is "qualified, experienced, and generally able" to pursue a class action based on his claims against the Plan, Metlife, and UHIC.

### B.    *Commonality and Typicality*

Although they are separate and distinct requirements, commonality and typicality "tend to merge" and are often discussed together. General Tel., 457 U.S. at 157 n.13. Commonality exists when the "legal question linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir.1995) (citations omitted). The commonality requirement is met if a common issue pervades all class members' claims. See Paxton, 688 F.2d at 561. Commonality "does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are

---

[5]Defendants also objected to plaintiffs' adequacy as representatives by pointing out the fact that, should the Court grant their motion and certify a class, plaintiffs have argued against sending class-wide notice at this time. This, defendants assert, demonstrates plaintiffs' unwillingness and/or inability to assume the costs necessary to provide class-wide notice. The Court does not agree. The fact plaintiffs do not advocate for class notification at this juncture is not evidence that plaintiffs do not have the resources or means to send out class notices.

14

not identically situated." Id. (citations omitted). Typicality requires a demonstration that the members of the class have the same or similar grievances as the named plaintiff. Alpern, 84 F.3d at 1540. The typicality requirement is "satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." Paxton, 688 F.2d at 561-62 (quoting C. Wright & A. Miller, Federal Practice & Procedure § 1764 at n.21.1 (Supp. 1982)). "The burden of showing typicality is not an onerous one. It does, however, require something more than general conclusory allegations that unnamed [plaintiffs] have been [wronged]." Id.

Plaintiffs identify four issues that are "central" to their claims:

- How, under the language at issue, must UHIC determine the amount of class members' benefit reserve?

- What, under the language at issue, must UHIC do with class members' properly calculated benefit reserve?

- Did the defendants deprive class members of benefits as a result of the manner in which defendants process coordination of benefits claims?

- Whether plaintiffs are entitled to relief?

In examining these identified "common" issues in the context of commonality and typicality, the Court is struck by the fact that plaintiffs have failed to identify the "language at issue" to which they are referring. Upon further reading of the briefs, it become apparent that the "language at issue" is specific language from the MetLife Choices Plan. More specifically it is language in the SPD regarding the calculation of secondary benefits under the Plan. Plaintiffs, however, seek to represent not only members in the MetLife Choices Plan, but also persons in any plan "controlled, underwritten or administered" by UHIC, MetLife, or their affiliates or subsidiaries where secondary medical benefits are or were calculated under the come-out-whole method of coordinating benefits with a benefits

15

reserve. Setting aside issues of standing and whether Mr. Chorosevic can even represent members of plans that currently use the come-out-whole method, plaintiffs have identified no other plan with the same language as the MetLife Choices Plan. This point is significant because ERISA itself does not provide a right to benefits, but rather a right to benefits is determined under the terms of the plan as written. Ravenscraft v. Hy-Vee Employee Ben. Plan & Trust, 85 F.3d 398, 401 (8th Cir. 1996). In fact, ERISA does not even provide guidance on coordination of benefits issues. COB Clearinghouse Corp. v. Aetna U.S. Healthcare, 362 F.3d 877, 879 (6th Cir. 2004). By bringing an ERISA Section 502 claim, plaintiffs are asking the Court to review and possibly interpret terms of the MetLife Choices Plan. Thus, in order for there to be commonality and typicality with persons in other plans, plaintiffs must show the relevant language controlling the coordination of secondary benefits in the MetLife Choices Plan is similar, if not identical, to language in other plans, which they have not done.

But the terms regarding the method of coordinating secondary benefits is not the only relevant plan language at issue in this case. Plaintiffs are asking the Court to decide whether the plan administrators and/or claims administrators made proper benefits determinations. The standard under which the Court is to review any such benefits determination is dependent on the terms of that particular plan. An administrator's and/or fiduciary's determination of benefits is reviewed de novo, unless the plan language grants the administrator and/or fiduciary discretionary authority to determine benefits eligibility and construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). There is no allegation or claim that the applicable language and, ergo, standard of review would be the same for all plans in the proposed class.

An additional issue that would involve specific plan language is the initial inquiry for a breach of fiduciary duties claim. Who is and is not a plan fiduciary is dependent, in part, on plan language.

Here, plaintiffs maintain, without citing to any authority, that UHIC and MetLife are fiduciaries for the MetLife Plan because UHIC is the claims administrator and MetLife is the plan administrator. Claims administrators, however, are not automatically fiduciaries. That status is dependent upon language found in the particular plan and language in any service agreement, as well as duties actually performed by the third-party administrator. Christiansen v. Qwest Pension Plan, 462 F.3d 913, 917 n.2 (8th Cir. 2006); Harold Ives Trucking Co. v. Spradley & Coker, Inc., 178 F.3d 523, 526 (8th Cir. 1999); Harris v. SWAN, Inc., 459 F. Supp. 2d 857, 863 (E.D. Mo. 2005). Again, there is nothing to suggest that fiduciary status would be the same for all claims administrators of the multitude of plans that fall within the proposed class definition.

These are but a few of the predominant issues in this case that preclude the Court from finding Mr. Chorosevic's claims are typical of persons who are members in thousands of differing plans.[6] The Court acknowledges there have been cases in which courts have certified a class consisting of persons from more than one plan. These cases, however, are either distinguishable from the facts at hand or are not controlling on this Court. For example, in Forbush v. J.C. Penney Co., Inc., the plaintiff sought to represent participants in more than one ERISA plan. 994 F.2d 1101, 1104 (5th Cir.1993). There were, however, only four different pension plans in the proposed class, as opposed to thousands. Id. In Fallick v. Nationwide Mut. Ins. Co., where the proposed class included a number of ERISA plans administered by one defendant, the defendant admitted it employed the same methodology that was

_____

[6]As defendants point out, there are additional problems with the plaintiffs' proposed class as written. For example, the meaning of "controlled, underwritten or administered" is rather vague and ambiguous. There would also be the issue of culling out plans that are not within the class because they are not controlled by ERISA, such as those that do not have a sufficient administrative scheme or governmental and religious plans. While these issues may be more apropos of class ascertainability, as opposed to commonality and typicality, they do mitigate against certifying the class as written, as these issues are often contested and require factual inquiries.

17

challenged in each of the plans.  162 F.3d 410, 423 (6th Cir. 1998).

In sum, the Court finds Mr. Chorosevic, the only named plaintiff with standing in this case, does not meet the commonality and typicality requirements of Rule 23(a)(2) and (3) with respect to members of plans other than MetLife Choices.

### C.    Numerosity

Plaintiffs must also demonstrate that the class of plaintiffs is "so numerous that joining of all members would be impracticable." Fed. R. Civ. P. 23(a)(1).  To meet this requirement, the Court must conclude that the class is sufficiently large "so as to render joinder of all its members impracticable in light of the particular circumstances of the case." Wakefield v. Monsanto Co., 120 F.R.D. 112, 115 (E.D. Mo. 1988) (citing Arkansas Educ. Ass'n v. Board of Educ. of Portland, Ark. Sch. Dist., 446 F.2d 763, 765 (8th Cir. 1971)).  See also General Tel. Co. of the N.W., Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980).  Impracticable does not mean that joinder must be impossible, but it does require a showing that it "would be extremely difficult or inconvenient to join all members of the class." Morgan v. United Parcel Serv. of Am., 169 F.R.D. 349, 355 (E.D.Mo.1996).  See also Arkansas Educ. Ass'n, 446 F.2d at 765.

Factors courts should consider when evaluating numerosity include the number of persons in a proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factors relevant to the practicability of joinder.  Paxton, 688 F.2d 552, 559-60 (8th Cir.1982); Saey v. COMP USA, Inc., 174 F.R.D. 448, 449-50 (E.D. Mo. 1997), Morgan, 169 F.R.D. at 355; Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis, 143 F.R.D. 216, 220 (E.D. Mo. 1992).

While there is no numerical requirement for satisfying the numerosity requirement, the Court

18

acknowledges forty class members generally satisfies the numerosity requirement. Herbert Newberg, et al., Newberg on Class Actions, § 3.5 at 247-8 (4th ed); see also 3B Moore's Federal Practice § 23.05[1] at 23-143-45 (2d ed.1995) ("while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred . . . have sustained the [Rule 23(a)(1)] requirement"); cf. Emanuel v. Marsh, 828 F.2d 438, 444 (8th Cir.1987) ("this court has not established any rigid rules regarding the necessary size of classes") (vacated on other grounds); Paxton, 688 F.2d at 559 ("[n]o arbitrary rules regarding the necessary size of classes have been established); Morgan, 169 F.R.D. at 355.

In support of their argument that the proposed class meets the numerosity requirement of Rule 23(a)(1), plaintiffs point to the fact that UHIC administers thousands of different employer-sponsored health care benefits plans, with millions of participants across the country. They allege UHIC "provides claims administration for over 900,000 people in the metropolitan St. Louis area alone." See Plaintiffs' memorandum in support of their motion for class certification at 17. The issue before the Court is not how many persons are covered by a medical plan administered by UHIC, but rather, how many persons fall within plaintiffs' proposed class. Plaintiffs provide no support for the number of persons who may fall within their putative class definition. In fact, they have only identified one – plaintiff Lawrence Chorosevic. The other named plaintiff, Diane Chorosevic, does not even fall within the proposed class definition.

For the reasons stated above, the Court is not inclined to certify the class plaintiffs propose. In addition to not having standing to pursue claims on behalf of the class as defined, there are issues of commonality and typicality, as well as issues of adequacy of representation. While the Court might entertain certification of a class consisting of those who use or have used MetLife Choices as a

secondary insurer, there is absolutely nothing in the record before the Court to indicate how many persons might be included in such a class. Any conclusion that the number is at least forty, the number generally acknowledged needed to meet the numerosity requirement, would be sheer speculation, which is not enough. Saey, 174 F.R.D. at 449-50. Also, there is also nothing in the record to indicate where such persons are located, whether it would be inconvenient to try individual suits, and the relative size of their claims – additional factors the Court might take into consideration when evaluating the numerosity requirement of Rule 23(a).

For the foregoing reasons and based on the evidence and allegations presented, the Court finds that certification of plaintiffs' class is not appropriate at this time because plaintiffs have not shown they meet the requirements of Rule 23(a). The Court, therefore, need not discuss whether plaintiffs have met the requirements of Rule 23(b)(1), (2) or (3).

### V. Class Discovery

In addition to moving for class certification, plaintiffs request, should the Court find it has inadequate information to decide the issue of class certification, that they be allowed to engage in class discovery. Defendants object to the request. It appears from the record that, for various reasons, the parties did not engage in any discovery prior to filing the present motion. Based on the Court's rulings today, the Court will allow plaintiffs to engage in limited class discovery regarding factors relevant to the numerosity requirement of Rule 23(a). In light of the Court's findings as to typicality, commonality and adequacy of representation of the proposed class as currently written, however, any such discovery will be limited to the MetLife Choices Plan.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for class certification is **DENIED** without

prejudice.  [Doc. 114]

Order setting Rule 16 Scheduling Conference to follow.




_____
CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE



Dated this ____26th____ day of July, 2007.