**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DIANE CHOROSEVIC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:05-CV-2394 CAS |
| | ) |
| METLIFE CHOICES, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiffs' amended motion to certify this litigation as a class action. Because plaintiffs have failed to meet their burden of establishing the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, the Court will deny the motion.

**I.   Background**

The Court outlined extensively the background of this case in its prior order on class certification, and aside from pertinent facts that are relevant here, the background will not be repeated. See Doc. 133.

*A.   Prior Order Denying Class Certification*

On December 6, 2006, plaintiffs filed their first motion to certify this litigation as a class action, seeking to certify a class consisting of:

> All Members (including subscribers, participants and beneficiaries) of ERISA-covered health plans (a) whose plans are controlled, underwritten or administered (including the administration of claims) by United Healthcare Insurance Company or its affiliates or subsidiaries or The Metropolitan Life Insurance Company or its affiliates or subsidiaries; (b) for whom such plan was a secondary plan; and (c) where the applicable plan description provided that the amount by which such plan's benefits have been reduced shall be used by such plan to pay allowable expenses not otherwise paid which were incurred during the calendar year or claim determination period by the person for whom the claim is made.

Doc. 129 at 8-9.

The Court denied plaintiffs' motion to certify the class. See Doc. 133. The Court found that Mr. Chorosevic had standing to bring only his claims against the MetLife Employee Welfare Plan ("MetLife Choices" or "the Plan"), Metropolitan Life Insurance Company ("MetLife"), and United Healthcare Insurance Company ("UHIC") for damages and non-prospective equitable relief. Even as to these claims, however, the class could not be certified because Mr. Chorosevic was an adequate representative for only those persons who received secondary benefits under the Plan. The Court stated that it might entertain certification of a class of individuals who use or have used MetLife Choices as a secondary insurer, but that it had no information regarding whether that class would be sufficiently numerous to meet the requirements of Federal Rule of Civil Procedure 23(a). The Court allowed plaintiffs to conduct discovery to determine the possible number of class members in a class so defined.[1]

### B.    *Plaintiffs' Newly-Proposed Class*

Since the Court's first ruling on class certification, plaintiffs have filed an amended complaint and now seek to certify a new class. By their amended motion for class certification, plaintiff now seeks to certify a class consisting of:

> All persons who used the [MetLife Choices] Plan as a secondary insurer from June 30, 1995 to January 1, 2006.

Pl. Mem. at 2 (exclusions omitted).

As noted in the Court's original order on class certification, plaintiffs bear the burden of demonstrating their proposed class satisfies the requirements of Rule 23. Although the prior order contemplated certifying a class of individuals who use or had used MetLife Choices as a secondary

---

[1]Subsequently, on April 28, 2008, the Court dismissed all plaintiff Diane Chorosevic's claims against defendants, finding that she lacked standing to sue. The Court also dismissed Count III of plaintiffs' amended complaint for failure to state a claim. See Doc. 184.

insurer, because that class was not before the Court, the Court did not conduct the requisite "rigorous analysis" of whether the class would satisfy Rule 23. See General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). As that class is now before the Court, the Court will conduct such an analysis.

## II. Legal Standard

Plaintiffs bear the burden of demonstrating that the requirements of Rule 23 have been satisfied. Bishop v. Committee on Prof'l Ethics & Conduct, 686 F.2d 1278, 1288 (8th Cir. 1982). Specifically, plaintiffs must meet the prerequisites of Rule 23(a) and one additional set of alternative requirements under Rule 23(b). The Court has broad discretion in determining whether an action may be maintained as a class action. Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis, 143 F.R.D. 216, 219 (E.D. Mo. 1992). However, a class action cannot be certified unless the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23 have been met. See General Tel., 457 U.S. at 161.

When conducting its Rule 23 analysis, the Court is to accept the substantive allegations in plaintiffs' complaint as true. See Mathers v. North Shore Mining Co., 217 F.R.D. 474, 483 (D. Minn. 2003). But because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." General Tel., 457 U.S. at 160 (citations omitted); see also Walker v. World Tire Corp., Inc., 563 F.2d 918, 921 (8th Cir. 1977) ("The District Court must have before it sufficient material to determine the nature of the allegations, and rule on compliance with the Rule's requirements[,]" such a determination "can seldom be determined on the basis of the pleadings alone.") (citations omitted).

Federal Rule of Civil Procedure 23(a) allows plaintiffs to sue as representative parties on behalf of a class only if they meet four threshold requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**III.    Discussion**

In its prior order on class certification, the Court outlined the legal standards for the separate components of Rule 23(a), citing the controlling case law. Because this is the second class certification motion, in the interest of brevity, the Court will not restate these standards and citations here, but will refer to the relevant portions of the Court's July 26, 2007 order.

*A.    Numerosity*

In its prior order on class certification, the Court acknowledged that while there was no specific number of class members required to satisfy the numerosity component of Rule 23(a), generally a class of forty members is sufficient. See Doc. 133 at 19 (citing cases). After conducting discovery on this issue, plaintiffs have determined that between May 2004 and December 2005, 109 individuals with a commercial primary insurer (as opposed to Medicare) made at least one secondary benefit claim under the Plan, and many submitted multiple secondary claims.[2] Assuming the number of claims made during this 19-month time frame is representative of the number of claims made throughout the proposed ten-year class period, roughly 654 individuals with a commercial primary insurer would have made at least one secondary benefit claim under the Plan during the proposed

---

[2]During the same time period, individuals with Medicare as their primary insurer submitted a total of approximately 31,500 claims for secondary benefits under the Plan.

class period. At the very least, the class would contain the 109 individuals with a commercial primary insurer who made claims for secondary benefits under the Plan from May 2004 to December 2005.

Defendants do not dispute that plaintiffs have satisfied Rule 23's numerosity requirement. Based on the numbers presented by plaintiffs after sufficient discovery, the Court finds that a class of individuals consisting of all people who used the MetLife Choices Plans as a secondary insurer from June 30, 1995 to January 1, 2006 would be sufficiently numerous to satisfy the requirement of Rule 23(a)(1). See Doc. 133 at 19-20.

### B. *Commonality and Typicality*

Although separate and distinct, the Rule 23(a)(2) and (3) requirements of commonality and typicality tend to merge and are often discussed together. See Doc. 133 at 14-15 (discussing the governing standard under Rule 23(a)(2) and (3)). Under the new class definition, plaintiffs seek to represent all persons who used the MetLife Choices Plan as a secondary insurer. The crux of their claim is that these individuals have been damaged by defendants' alleged improper processing of secondary claims under the coordination of benefits ("COB") rules set forth in the Plan. Specifically, plaintiffs challenge the "come out whole" with a benefit reserve methodology for processing claims on a secondary basis.

Both parties agree that the vast majority of the proposed class (98.5% by defendants' calculations) are Medicare-eligible participants. See Pl. Mem. at 2-3; Defs. Opp'n at 14. Defendants state that the Plan uses a COB approach for Medicare-eligible participants that is materially different from the COB approach used for non-Medicare-eligible participants. Significantly, the COB approach for Medicare-eligible participants does not use the challenged "come out whole" methodology, but instead uses a type of "non-duplication" COB known as "government exclusion." Defs. Opp'n at 8.

Pursuant to the Plan, participants who are eligible for Medicare are offered the Medicare Supplemental Plan ("MSP"). When a MetLife Choices MSP participant incurs medical expenses, they submit these expenses to Medicare for payment. Medicare pays the allowable and covered amounts. Participants then submit any unpaid Medicare-allowable expenses for payment under the MSP program. If the charge is covered under the MSP program, the MSP pays a portion of these expenses based upon its coinsurance rates after application of the MSP deductibles. No benefit reserve is ever created for these claims. As described in the Plan:

> Under the Medicare Supplemental Plan (MSP), Medicare is the primary payer. When you become Medicare-eligible, Medicare pays toward your eligible expenses first, based on Medicare provisions. The MSP under MetLife Choices then pays a percentage of the remainder of your Medicare-approved eligible expenses after the MSP deductible has been met. The deductible is based on the Medical Option you selected.

Def. Opp'n, Ex. B. at M-28.

The Plan offers the following example on page M-30:

| Expenses | Charges | Approved and Covered by Medicare Part B | Eligible for Reimbursement by Medicare Suppl. Plan (MSP) |
|---|---|---|---|
| Surgery | $2,500 | $2,000 | |
| Doctor's Visits | $1,300 | $1,200 | |
| Diagnostic X-rays | $1,000 | $ 900 | |
| Total | $4,800 | $4,100 | |
| Medicare Deductible | | ($ 100) | |
| After Deductible | | $4,000 | |
| Medicare Coinsurance | | 80% | |
| Paid by Medicare | | $3,200 | |
| Not Paid by Medicare | | $ 900 | $ 900 |
| MSP Coinsurance (Option 4) | | | 70% |
| Paid by MSP | | | $ 630 |
| You Pay | | | $ 270 |

By contrast, the allegations in plaintiffs' amended complaint relate to the manner in which defendants handled the claims of Mr. Chorosevic, a non-Medicare-eligible Plan participant. Mr. Chorosevic's benefits were calculated using the "come out whole" COB method with a benefit reserve. Simply put, under this COB method, a benefit reserve is created and credited with any amount the Plan saved by being the secondary insurer as opposed to the primary insurer. See generally Am. Compl. at ¶¶ 24-34. Plaintiffs allege defendants did not properly compute benefits

using the "come out whole" COB method because they did not apply the benefit reserve to pay unpaid allowable expenses participants had incurred earlier in the year. Id.; see also Pl. Mem. at 3-6.[3]

The alleged violations in plaintiffs' suit are specific to the "come out whole" COB with a benefit reserve. See Am. Compl. at ¶¶ 28-34; Pl. Mem. at 4-5. Based on the terms of the Plan, however, the challenged COB method did not apply to Medicare-eligible participants. See Defs. Opp'n, Ex. B. at M-26, M-28-M-30. Based on a snapshot of secondary claims processed during a nineteen-month time period, the overwhelming majority of claims—approximately 31,500 of 32,000—were submitted by Medicare-eligible participants. See Pl. Mem. at 2-3. Therefore, the benefits of the vast majority of plaintiffs' purported class members were calculated under a different COB approach and reimbursement formula from what is challenged in the complaint. These class members (possibly 98.5% of the class) cannot maintain any action against defendants pursuant to 29 U.S.C. § 1132 to recover benefits as alleged in the amended complaint because they have not suffered the denial of benefits plaintiffs allege.

Plaintiffs have not briefed for the Court the requirements of commonality and typicality for the class they now seek to certify, relying instead on the assumption that in entertaining the notion of class certification in the prior order, the Court had already conducted the rigorous analysis required under Rule 23(a). See Pl. Mem. at 9 ("The Court previously held that Mr. Chorosevic meets the commonality and typicality requirements with respect to claims on behalf of a class of individuals who have used the Plan as a secondary insurer."). In pointing out the shortcomings of plaintiffs' first class certification motion, the Court stated that "it might entertain certification of a class consisting of those who use or have used MetLife Choices as a secondary insurer," but stated that even with

---

[3]Plaintiffs also allege defendants used the incorrect preferred provider discount rates when determining the amounts MetLife Choices saved by virtue of being the secondary plan.

respect to this class, additional information was required.  See Doc. 133 at 19.  After defendants pointed out in their opposition to class certification that potentially 98.5% of plaintiffs' newly-proposed class did not suffer the denial of benefits alleged in the amended complaint, plaintiffs sought an extension of time to file a reply brief.  Plaintiffs never filed a reply brief, however, despite prompting from the Court.  Therefore, the Court has no guidance on how plaintiffs presume to meet the commonality and typicality requirements of Rule 23 when perhaps only 1.5% of the class they seek to represent has suffered the injury they seek to redress.[4]

In order to obtain class certification, plaintiffs bear the burden of showing the requirements of Rule 23 are met.  Based on the evidence and allegations presented, the Court finds that plaintiffs' most recent proposed class cannot meet the requirements of commonality and typicality of Rule 23(a)(2) and (3).  For this reason, the Court finds that certification of plaintiffs' class is not appropriate under Rule 23(a).  The Court, therefore, need not discuss the requirements of Rule 23(b)(1), (2), or (3).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' amended motion for class certification is **DENIED**.  [Doc. 172]

                                                                 */s/ Charles A. Shaw*
                                                             **CHARLES A. SHAW**
                                                            **UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of June, 2008.

---

[4]Additionally, even with respect to class members who made a secondary claim under the challenged COB method, those that made only a single secondary claim during any one claim determination period could not have been harmed because they had no eligible out-of-pocket expenses against which a benefit reserve could be applied.