# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DIANE CHOROSEVIC and LAWRENCE CHOROSEVIC, on behalf of themselves and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | No. 4:05-CV-2394 CAS |
| METLIFE CHOICES, et al., ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment. Because the Court finds that plaintiff Lawrence Chorosevic failed to exhaust his administrative remedies before filing suit, the Court will grant defendants' motion for summary judgment on plaintiff's first amended complaint and deny plaintiff's motion for summary judgment.[1] The Court will deny as moot defendants' motion to strike portions of plaintiff's statement of undisputed material facts.

**Background**

This case was filed in 2005. The original plaintiffs Lawrence and Diane Chorosevic, individually and as representatives of a putative class, asserted claims against defendants under ERISA seeking monetary and injunctive relief arising out of defendants' processing of plaintiff's claims for secondary health insurance benefits. In various orders, the Court has dismissed all claims of plaintiff Diane Chorosevic, denied two motions for class certification, dismissed plaintiff Lawrence Chorosevic's ERISA § 1132(a)(2) claim, and held that all claims for injunctive relief are moot because of an amendment to the Plan. The only remaining claim before the Court is Mr. Chorosevic's

---

[1]On April 28, 2008, the court dismissed all claims of Diane Chorosevic. The term "plaintiff" in this Memorandum and Order refers to Lawrence Chorosevic.

individual claim for benefits under ERISA § 1132(a)(1)(B) and for equitable relief under ERISA § 1132(a)(3).

Mr. Chorosevic's individual claim under ERISA § 1132(a)(1)(B) arises out of three denials of benefits in the amount of $13.00, $69.20, and $190.10, respectively. Both sides agree that the $69.20 claim has been resolved, and therefore the amount at issue under § 1132(a)(1)(B) is $203.10. Plaintiff's request for injunctive relief under § 1132(a)(3) asks the Court to order defendants to reprocess plaintiff's claims to award him the $203.10. Pending before the Court, therefore, are cross motions for summary judgment concerning whether plaintiff is entitled to payment of $203.10 for allegedly wrongfully denied benefits from 2004.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of

material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

Where the parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. See, e.g., Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary decision on the merits."); see generally, 11 James Wm. Moore, et al., Moore's Federal Practice § 56.10[6] (3d ed. 2007). Thus, a cross-motion for summary judgment is treated in the same manner as a single summary judgment motion.

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' motions for summary judgment.

**Facts**

During 2004, Diane Chorosevic, a former employee of General American Life Insurance Company, was covered by a group health insurance plan, the MetLife Choices Plan ("Choices Plan" or "Plan"), sponsored by General American's corporate parent, defendant MetLife. Plaintiff Lawrence Chorosevic was also covered under the Choices Plan as a dependent of his spouse, Diane. The Choices Plan is an employee welfare benefit plan as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), that is sponsored and maintained by MetLife.

Defendant United HealthCare Insurance Company ("UHC") is named as the Claim Administrator of the Plan for Medical Plan Benefits under Options 2, 3, and 4. The Claims Administrator reviews benefit decisions and has final decision making authority on whether to pay a claim. Defendant MetLife is the named Choices Plan Administrator. The Plan Administrator has full discretion in making all required determinations on benefit eligibility.

Plaintiff Lawrence Chorosevic was also insured by a health benefit plan maintained and administered by Blue Cross and Blue Shield of Missouri.

**Applicable Facts Surrounding Plaintiff's Injuries**

Plaintiff's claims relate to out-of-pocket expenses incurred in June and August 2004. (Pl. Facts ¶¶ 15-20). On June 17, 2004, plaintiff received medical services, and submitted a claim for these services to his primary benefit plan administered by Blue Cross and Blue Shield of Missouri. A claim was also submitted to the Choices Plan, as the secondary plan, to obtain further payment for these services. As a result of these services, plaintiff incurred out-of-pocket expenses of $13.00, which remained unreimbursed throughout 2004. (Id. at ¶¶ 15, 20).

On October 27, 2004, Mrs. Chorosevic wrote to United Healthcare Service LLC, Greensboro Service Center, PO Box 740800, Atlanta, Georgia, asking that UHC reprocess her husband's claim

for secondary benefits under the Choices Plan arising out of his June 17, 2004 receipt of medical services. In her letter, Mrs. Chorosevic stated that she needed to know the preferred provider rates negotiated by UHC and not the preferred rates negotiated by Mr. Chorosevic's primary insurer, Blue Cross and Blue Shield. She stated her belief that only after applying the UHC rates to the deductible could UHC coordinate benefits with Blue Cross and Blue Shield.

On August 20, 2004, plaintiff received medical services from St. Anthony's Medical Center in St. Louis, Missouri. Plaintiff subsequently received payments for those services under his primary health benefit plan administered by Blue Cross and Blue Shield of Missouri. A claim was also submitted to the Choices Plan, as the secondary plan or payor, to obtain further payment of medical services rendered on August 20, 2004.

On November 17, 2004, Mrs. Chorosevic wrote to United Healthcare Appeals, P.O. Box 30432, Salt Lake City, Utah, disputing the determination of benefits under the Choices Plan related to the August 20, 2004 claim. She alleged plaintiff was owed an additional $69.20 with respect to these services. On December 7, 2004, United Healthcare denied the appeal.

In a subsequent correspondence dated January 26, 2005 from Ms. Sharon Bibby, Senior Benefits Specialist for MetLife, Ms. Bibby stated that the claim was processed incorrectly by UHC, and MetLife had directed UHC to pay plaintiff $69.20 related to the claim. The letter stated further: "UHC is reviewing your other claims as well. We are also working with UHC to review and if necessary take corrective action regarding all of the MetLife secondary COB claims processed by UHC."

On April 28, 2005, Mrs. Chorosevic wrote directly to Ms. Bibby at MetLife Human Resources and Benefits in Bridgewater, New Jersey. In this letter, Mrs. Chorosevic details again her

belief that the claims processed by UHC were incorrectly processed using the Blue Cross and Blue Shield provider discounts, and not those of UHC. Mrs. Chorosevic states further:

> Regarding the "banked money," and UHC provider discounts we discussed, there are several claims which need to be reprocessed due to the fact that the wrong amounts were applied to the deductible. If UHC had used its provider discounts, a greater amount would have been applied to the deductible. Also, the claims for 2002, 2003, and 2004 need to be recalculated using the "banked money" since my husband incurred some rather large claims in those years. This is money I had to pay the providers direct. Therefore, I am requesting that any claims where UHC did not make payment be reprocessed.

On May 23, 2005, Mrs. Chorosevic sent a letter to United Healthcare Service LLC, Greensboro Service Center, Atlanta, Georgia related to medical services rendered from September 30, 2002 through August 20, 2004. In the letter, plaintiff states:

> Since I was not aware that I could request reimbursement out of the "banked money" account, I am doing so now. I hope I will not be penalized for not requesting reimbursement sooner. Just because I did not request the money owed to me, does not mean I am not entitled to receive it now. I reviewed the MetLife plan document and could not see any limitation regarding my request.

On June 7, 2005, plaintiff filed suit in the United States District Court for the Southern District of Illinois.

**The Plan's Appeal Procedure**

The Choices Plan states that "[p]articipants wanting to dispute an adverse benefit determination, payment amount or plan interpretation that relates to their receipt of plan benefits or exercise of a current right available under the plan must file a claim with 180 days of receipt of the adverse determination. Medical appeals must be sent in writing to United Healthcare at [MetLife Medical Claims, United Healthcare, PO Box 740816, Atlanta, GA 30374-0816]."

The Choices Plan also provides that "[a]ll determinations regarding benefits and eligibility will be made within 30 days . . . . [and United] has the final decision making authority on whether or not

to pay a claim." The Choices Plan further states that "[r]equests for benefits or any other claims in respect to the benefit program including those in respect to coverage, eligibility, interpretation of plan terms must be made to . . . . MetLife Medical Claims, United Healthcare, PO Box 740816, Atlanta, GA 30374-0816." The Choices Plan also states:

> If a denial of benefits is upheld, participants will have 60 days from the notification letter's date to submit a second appeal if they disagree. The second level of appeal must be made in writing to the address listed above along with relevant information. After that period, no further administrative appeals can be made. The second level appeal will be conducted and United Healthcare, in its capacity as Claims Administrator, will determine the benefits payable within 30 days.

Plaintiff was notified of the determination of his claim under the Choices Plan with respect to the medical services rendered on June 17, 2004 and August 20, 2004 by separate "Explanation of Benefits," both of which stated in part:

> A REVIEW OF THIS BENEFIT DETERMINATION MAY BE REQUESTED BY SUBMITTING YOUR APPEAL TO US IN WRITING AT THE FOLLOWING ADDRESS: UNITEDHEALTHCARE APPEALS, P.O. BOX 30342, SALT LAKE CITY, UT 84130-0432. THE REQUEST FOR YOUR REVIEW MUST BE MADE WITHIN 180 DAYS FROM THE DATE YOU RECEIVE THIS STATEMENT. IF YOU REQUEST A REVIEW OF YOUR CLAIM DENIAL, WE WILL COMPLETE OUR REVIEW NOT LATER THAN 30 DAYS AFTER WE RECEIVE YOUR REQUEST FOR REVIEW.

The "Explanation of Benefits" issued with respect to plaintiff's claims for the medical services rendered on June 17, 2004 and August 20, 2004 also stated in part: "YOU MAY HAVE THE RIGHT TO FILE A CIVIL LAWSUIT UNDER ERISA IF ALL REQUIRED REVIEWS OF YOUR CLAIM HAVE BEEN COMPLETED."

**Discussion**

    I.        **Plaintiffs Claims Under 29 U.S.C. § 1332(a)(1)(B)**

          A.       Exhaustion of Claims

ERISA does not expressly mandate the exhaustion of administrative or plan remedies prior to bringing suit. See Conley v. Pitney Bowes, 34 F.3d 714, 716 (8th Cir. 1994). Rather, plan beneficiaries must exhaust their administrative remedies when exhaustion is clearly required by the particular plan involved and the beneficiary has notice of the procedure. See Wert v. Liberty Life Assurance Co. of Boston, Inc., 447 F.3d 1060, 1063 (8th Cir. 2006) (stating that the "exhaustion requirement applies so long as the employee has notice of the [review] procedure"). "When an ERISA benefits plan clearly requires exhaustion, a claimant's failure to exhaust her administrative remedies bars her from seeking relief in federal court." Norris v. Citibank N.A. Disability Plan, 308 F.3d 880, 884 (8th Cir. 2002). A beneficiary may be freed from the exhaustion requirement if exhaustion "would be wholly futile." Burd v. Union Pacific Corp., 223 F.3d 814, 817 n.4 (8th Cir. 2000).

The Eighth Circuit has repeatedly concluded that benefit claimants must exhaust the review process mandated by ERISA before bringing claims for wrongful denial to court. See Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997). Several policy reasons exist for the exhaustion requirement, including minimizing the number of frivolous ERISA lawsuits, promoting the consistent treatment of benefit claims, providing a nonadversarial dispute resolution process, and decreasing the cost and time of claims settlement. See id.

This case clearly illustrates the policy reasons favoring exhaustion of administrative remedies: (1) prior to bringing suit, plaintiff had successfully appealed a prior decision of the claims

administrator, showing the process worked; and (2) the remaining $203.10 in disputed claims would have been much more economically resolved through the internal appeal procedure. Moreover, the record evidences substantial communication between the parties prior to suit in an effort to resolve plaintiff's claims. Review of the communications between the parties reveals that plaintiff brought the issue in this case, i.e., the administration of the benefit reserve (or "banked money"), to defendants' attention, at most, forty days prior to filing suit. He perfected his appeal of this issue (if at all) fourteen days prior to filing suit, and did not wait the requisite thirty days for defendants to respond. The parties have been embroiled in this litigation since June 2005, and have engaged in significant motion practice, including filing two motions for class certification. While the remainder of this Memorandum and Order addresses the parties' technical arguments concerning exhaustion of administrative remedies, the Court is mindful of the policy reasons favoring exhaustion prior to filing suit.

Plaintiff's claim for denial of benefits pursuant to § 1132(a)(1)(B) relates to three instances in which he incurred out-of-pocket expenses, and was not reimbursed through the benefit reserve: (1) $13.00 for services rendered on June 17, 2004; (2) $69.20 for services rendered on August 20, 2004; and (3) $190.10 for services rendered on August 20, 2004. (Pl. Facts ¶¶ 15-19). Defendants argue that plaintiff did not appeal these denial of benefits until May 23, 2005, which is outside the 180 days allowed for filing an appeal after an adverse determination. Defendants argue further that even if the May 23, 2005 appeal could be considered timely, plaintiff brought suit on June 7, 2005, fourteen days after filing the appeal. Because plaintiff filed suit prior to the time defendants had to respond to the appeal, defendants argue plaintiff did not exhaust his administrative remedies prior to filing suit.

In response, plaintiff states that he exhausted his claims because in a letter dated January 26, 2005 from Ms. Sharon Bibby, Senior Benefits Specialist at MetLife, MetLife agreed to review "all of the MetLife secondary COB claims processed by UHC." In the alternative, plaintiff states that he is deemed to have exhausted his claims because defendants did not follow their claims procedure, and that exhaustion would have been futile in any event.

On November 17, 2004, plaintiff timely appealed the denial of benefits with respect to his August 20, 2004 treatment. After initially denying the appeal, on January 26, 2005, Ms. Sharon Bibby, Senior Benefits Specialist at MetLife, sent a letter to Mrs. Chorosevic stating that UHC paid the claim incorrectly under the COB provision and should have paid plaintiff the contested $69.20. The letter states further that "UHC is reviewing your other claims as well. We are also working with UHC to review and if necessary take corrective action regarding all of the MetLife secondary COB claims processed by UHC." Based on this promise to review plaintiff's other claims, plaintiff argues that he did not need to take any additional steps to exhaust with respect to these claims. Essentially, plaintiff's position is that the representation in the letter that UHC would review other unspecified claims of plaintiff, worked to either exhaust his administrative remedies or waive the requirement that he exhaust his administrative remedies with respect to the $13.00 he incurred out of pocket for June 2004 services and the additional $190.10 he incurred out of pocket for the August 20, 2004 services. Plaintiff states, "This letter is direct, undisputed evidence of complete exhaustion of Plaintiff's claims for secondary benefits under the MetLife Plan."

As defendants correctly point out, however, plaintiff's appeal of the $69.20 claim did not relate to the issue of which he now complains, i.e., defendants' administration of the benefit reserve. Rather, in his appeal, plaintiff alleged he was underpaid $69.20 because the claim was processed using the primary plan's discount rate and should have been processed using UHC's discount rate. It was

not until Diane Chorosevic's April 28, 2005 letter to Ms. Bibby that she questioned the administration of the benefit reserve (or the "banked money"). Therefore, even if MetLife's representation that it would review and reprocess plaintiff's other claims under the appropriate COB provision worked to exhaust his claims for improper coordination of benefits, this would not have exhausted his claim that the benefit reserve was improperly administered. Plaintiff did not complain to MetLife regarding the administration of the benefit reserve until at least April 28, 2005, when plaintiff wrote to Ms. Bibby asking that the claims for 2002, 2003, and 2004 be recalculated using the "banked money."

The Court cannot find any support for plaintiff's position, and plaintiff offers none, that MetLife's agreement to reprocess plaintiff's claims using UHC's provider discounts (as opposed to the primary insurer's discounts) worked to exhaust any of plaintiff's claims, especially those related to the administration of the benefits reserve. The Eighth Circuit has stated that reconsideration of prior requests is to be encouraged (see Abdel v. U.S. Bancorp, 457 F.3d 877, 881 (8th Cir. 2006) (citing Mason v. Aetna Life Ins. Co., 901 F.2d 662, 664 (8th Cir. 1990)). If the Court were to find that MetLife's agreement in January 2005 to reprocess Mr. Chorosevic's claims from 2002 through 2004 satisfied plaintiff's exhaustion requirement, this would discourage the reconsideration of prior requests because it would restart an expired exhaustion process. Moreover, if the Court were to find that MetLife's agreement to reprocess plaintiff's claims using UHC's provider discounts satisfied plaintiff's exhaustion requirement for his separate claim regarding the administration of the benefits reserve, this would likely put an abrupt halt to defendants' reconsideration of prior requests. If a provider is to be encouraged to reconsider prior requests of a claimant, a finding that this reconsideration works to waive the exhaustion requirement on that claim and other potential claims in the future (or actually exhausts these claims) would be counterintuitive. Therefore, the Court does

not find that plaintiff exhausted his administrative remedies based on the January 26, 2005 letter from the Plan Administrator to Diane Chorosevic.

> B. "Deemed" Exhaustion of Claims

Next, plaintiff argues that he is deemed to have exhausted his administrative remedies because (1) defendants' notices of adverse benefit determinations were inadequate; (2) defendants did not respond to plaintiff's appeals; and (3) defendants' did not respond to plaintiff's allegedly late appeals.

> *(1)   Inadequate notice of denial of benefits*

Plaintiff argues that defendants' EOBs failed to comply with the claims procedures in the Choices Plan and the ERISA regulations governing notices of adverse benefit determinations. Without citing any specific EOBs or specific language contained in the EOBs, plaintiff summarily states the EOBs did not "set forth in a manner to be understood by the claimant" that his claims were being denied; did not identify "additional materials or information" upon which the denials were based; and did not describe any additional materials of information needed for further review.

As an initial matter, plaintiff has not cited to any portion of the record to support his claim that the EOBs could not be understood by the claimant, and has not met the Rule 56 specificity requirement. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004) (citing Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'") (internal citation omitted); Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal citation omitted); c.f. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).

Regardless, the Court has reviewed the EOBs of which plaintiff complains, and finds the explanations of the denials of benefits to be clear and set forth in a manner easily understood by claimant. For example, the denial of benefits dated August 20, 2004 states that the Plan pays "$0" because the claim was applied toward the satisfaction of plaintiff's deductible. The EOB shows the amount of plaintiff's deductible satisfied to date and the annual deductible obligation. The EOB also clearly states the process for appeal. This EOB is representative of all the EOBs submitted as attachments to Mrs. Chorosevic's affidavit. The Court has found no evidence in support of plaintiff's argument that the EOBs were unclear.

Moreover, it is readily apparent through a review of Mrs. Chorosevic's correspondence with defendants that she clearly understood the EOBs provided by defendants. Her position throughout her communications is that the primary and secondary benefits were being coordinated improperly. Nothing in her communications reflects any misunderstanding as to why the benefits were being denied. She knew precisely why the benefits were being denied, but disagreed with these determinations.

Plaintiff's arguments that the EOBs did not identify additional materials or information upon which the denials were based or additional materials or information needed for further review is similarly unpersuasive. The Choices Plan states:

> Participants whose requests for benefits are denied will receive a written explanation for the denial containing the reason for the denial, plan provision on which it is based, additional material or information *that may be needed* and appropriate steps to be taken to submit a claim for additional review.

Def. Facts, Ex. A at M-83 (emphasis added).

Nothing in the Choices Plan or ERISA requires an EOB to identify additional materials or information upon which the denials are based. Plaintiff's argument presupposes that the denial of

- 13 -

benefits is based upon material or information outside the provisions of the plan or that the administrator can identify information necessary for the claimant to perfect a claim. If the denial of benefits identifies the reason for the adverse determination, and that adverse determination is based on a plan provision, neither the Plan nor the ERISA regulations require the EOB to refer to additional materials upon which it is based or additional materials needed for further claim review. The EOBs provided to plaintiff clearly identify the reason for the adverse determination, the Plan provision upon which the denial is based, and the appeal procedure. The EOBs comply with the requirements for adverse benefit determinations as set forth in the Choices Plan and the ERISA regulations, and therefore plaintiff is not deemed to have exhausted his administrative remedies because of any failure of defendants to follow their claims procedures.

### (2) *Defendants did not respond to plaintiff's appeals*

Plaintiff argues that because defendants did not respond within thirty days to Mrs. Chorosevic's letter dated April 28, 2005, plaintiff is deemed to have exhausted his administrative remedies. Defendants' obligation to complete its review of an appeal within thirty days is triggered by the filing of an appeal to UnitedHealthcare Appeals, P.O. Box 30432, Salt Lake City, Utah or MetLife Medical Claims, United Healthcare, PO Box 740816, Atlanta, Georgia.[2] See Def. SOF, Ex. A at M-83; Ex. B. The appeal must be filed within 180 days from the date of the denial of benefits. See id.

---

[2]It is unclear to the Court why the Choices Plan and the EOBs list different addresses for challenging a claim determination. Despite the discrepancy in the addresses listed in the EOB and the Choices Plan, however, Mrs. Chorosevic's correspondence was sent to an inappropriate address, and therefore would not have triggered UHC's thirty-day period for determination of the appeal.

Mrs. Chorosevic's letter of April 28, 2005 was addressed to Ms. Sharon R. Bibby, Senior Benefits Specialist, Human Resources, Benefits, MetLife, 440 US Hwy 22, First Floor, Bridgewater, New Jersey. Because it was incorrectly addressed, the letter did not comply with the Choices Plan provisions or the EOB provisions for filing an appeal. For this reason, alone, the provisions of the Plan did not require defendants to respond within 30 days. Moreover, the letter sought the recalculation of claims from 2002, 2003, and 2004 using the "banked money." To the extent this letter relates to plaintiff's claims for payment from the benefit reserve arising out of his medical treatments in June and August 2004, this was Mrs. Chorosevic's first challenge to the administration of the benefit reserve. The challenge came ten months after the June 2004 claim determination and eight months after the August 2004 claim determination. The claim is untimely. For this additional reason, Mrs. Chorosevic's letter of April 28, 2005 did not trigger defendants' thirty-day obligation to respond to an appeal, and therefore plaintiff is not deemed to have exhausted his administrative remedies based on defendants' failure to respond.

### (3) Plaintiff is deemed to have exhausted even if his initial appeals were untimely

Plaintiff argues that even if his appeals were late, he is deemed to have exhausted his administrative remedies because defendants did not respond to the allegedly late appeals. For support, plaintiff cites the broad regulation that provides that where a plan does not follow its claims procedure, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a)." See Pl. Resp. at 9 (quoting 29 C.F.R. § 2560.503-1(1)). This regulation, however, creates no duty for a plan to respond to appeals filed after the deadline for filing appeals. The exhaustion requirement would be rendered meaningless if a claimant could belatedly appeal a denial of benefits, and thereby trigger the

obligation of a provider to respond. If the provider responded, plaintiff would argue he is deemed to have exhausted his administrative remedies; if the provider did not respond, plaintiff would argue he is deemed to have exhausted the administrative remedies because defendant failed to follow its own claim procedures requiring a response to an appeal within thirty days. The Court cannot find that plaintiff's belated appeal triggered the obligation of the Plan to respond.

Finally, plaintiff argues that a belated appeal "may be sufficient to meet the exhaustion requirement even though [plaintiff] did not initially pursue her initial remedies in a timely manner." Plaintiff cites one case for this proposition, Abdel v. U.S. Bancorp, 457 F.3d 877 (8th Cir. 2006). In Abdel, the Eighth Circuit mentioned in dicta that a claimant's internal appeal "may have been sufficient to meet the exhaustion requirement" even though it was untimely. Id. at 881. The Eighth Circuit did not elaborate on the factors it would consider in determining whether an untimely appeal "may be sufficient," and the case cited in the opinion, Jenkins v. Local 705 Int'l Bd. of Teamsters Pension Plan, 713 F.2d 247, 254 (7th Cir. 1983), is not helpful in this regard. In short, plaintiff has not offered any support for his argument that a belated appeal of a benefit denial is sufficient to invoke a plan's administrative remedies procedure. Such a rule would be contrary to prior rulings issued in this Court that a claimant's failure to follow a plan's claim and appeal procedures is barred from further proceedings. See, e.g., Goewert v. Hartford Life & Accident Ins. Co., 442 F. Supp. 2d 724, 730 (E.D. Mo. 2006) (stating failure to file a request for review within the Plan's limitations period is one means by which a claimant fails to exhaust administrative remedies).

    C.    <u>Futility Exception</u>

Finally, plaintiff argues that he was not required to exhaust his administrative remedies because any additional efforts to exhaust would have been futile.[3] The Eighth Circuit has held that ERISA plan participants are not required to exhaust their claims if they can demonstrate that exhaustion would be futile. See Burds v. Union Pacific Corp., 223 F.3d 814, 817 n.4 (8th Cir. 2000). "For application of the futility exception, it is not enough for a plaintiff to speculate that his appeal will be denied. In order to establish that an appeal would be futile, a plaintiff must show that it is 'certain' that a claim would have been denied on appeal." Goewert, 442 F. Supp. 2d at 730 (quoting Smith v. Blue Cross & Blue Shield United of Wis., 959 F.2d 655, 659 (7th Cir. 1992)).

Plaintiff argues that based on defendants' position during the administrative process, any additional efforts to exhaust would have been futile. Plaintiff's position is belied by the record. Plaintiff properly appealed the adverse determination of benefits for his treatment at St. Anthony's on August 20, 2004. Plaintiff sought the reimbursement of $69.20 in out-of-pocket expenses. It is undisputed that as a result of plaintiff's dispute and complaint, defendants ultimately paid plaintiff the $69.20 related to the August 20, 2004 claim. Thus, based on the record, the only claim plaintiff properly exhausted was paid after review. This is clear evidence that exhaustion of administrative remedies would not have been futile. See Reems v. United Healthcare Servs., 2008 WL 2773812, *5 (D.N.D. 2008).

Plaintiff also contends that based on the vigor of defendants' defense of this action, the exhaustion of the administrative process would have been futile. This rationalization for filing suit

---

[3]The Court reiterates that the only remaining claims before the Court under 29 U.S.C. § 1132(a)(1)(B) are plaintiff's individual claims for wrongful denial of benefits arising out of a $13.00 charge for services rendered on June 17, 2004; a $69.20 charge for services rendered on August 20, 2004; and a $190.10 charge for services rendered on August 20, 2004. See Pl. SOF (Doc. 213) at ¶¶ 15-20.

is insufficient to establish futility. The Court is not inclined to adopt any argument that would put a party at a disadvantage for exercising their rights to defend themselves in litigation. If the Court were to adopt plaintiff's argument, any plaintiff could establish futility simply by filing suit and waiting for a defendant to deny the allegations. Plaintiff has not demonstrated that any additional efforts to exhaust his administrative remedies would have been futile.

## II.   Plaintiff's Claims for Breach of Fiduciary Duty Under 29 U.S.C. § 1332(a)(3)

In his response, plaintiff contends that even if his ERISA § 1132(a)(1)(B) claim for denial of benefits is barred by his failure to exhaust, his ERISA § 1132(a)(3) claim is not precluded. Pursuant to ERISA § 1132(a)(3), plaintiff seeks an injunction ordering that his claims be reprocessed under reformed claims processing procedures. Significantly, plaintiff is not seeking an injunction to correct payments going forward, but rather an injunction to enforce a contractual obligation to pay past due sums.[4]

As the Court has previously noted, although it appears well-settled in the Eighth Circuit that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim, it does not appear that the appellate court has decided whether a beneficiary must exhaust administrative remedies prior to bringing a claim for breach of fiduciary duty. See Starbird v. Mercy Health Plans, Inc., 2008 WL 2157100, *5 (E.D. Mo. May 22, 2008). This District Court, however, has held that exhaustion of administrative remedies is mandatory in breach of fiduciary duty cases. See James v. HMO Missouri, Inc. - Blue Choice, 2008 WL 2817103, *1 (E.D. Mo. July 21, 2008); Goewert, 442 F. Supp. 2d at 728 n.1 ("[T]he Court agrees with and adopts the

---

[4]Plaintiff's secondary benefits under the Plan are no longer calculated using the come-out-whole method of coordinating benefits, and plaintiff does not allege defendants are currently miscalculating benefits under the new non-duplication method that went into effect on January 1, 2006. See Memorandum and Order dated July 26, 2007 at 7-8, Doc. 133.

reasoning of the First and Fifth Circuits, which have found exhaustion of remedies mandatory in breach of fiduciary duty cases, like denial of benefits cases."). The Court need not make such a determination in this case, however, because it finds the injunctive relief that plaintiff seeks is not appropriate relief under § 1132(a)(3).

Section 1132(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). In Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court placed significant limits on the equitable relief available under § 1132(a)(3). The Supreme Court held that neither an injunction requiring payment of money nor specific performance of a monetary obligation is a proper form of relief under this subsection. Id. at 210-11. A suit could seek an injunction to correct the method of calculating payments going forward, but is not available to enforce a contractual obligation to pay money past due. Id. at 212. In Great-West, petitioners sought to impose personal liability on respondents for a contractual obligation to pay monetary relief that was not typically available in equity. The Court characterized this relief as legal relief, not equitable, and held that it was disallowed under § 1132(a)(3). As the Court noted, "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." Id. at 211 n.1.

Here, plaintiff seeks injunctive relief ordering defendants to reprocess plaintiff's claims that were previously processed through the allegedly defective system. This claim for reprocessing of benefits is essentially a request for an injunction to enforce a contractual obligation to pay money past due. This is precisely what the Supreme Court disallowed under § 1132(a)(3) in Great-West. Id. at 212. The Court finds that this is a claim for wrongfully denied benefits expressed in equitable

language, and is not an appropriate claim for relief under § 1132(a)(3). See id. at 210-212; see also Fairview Health Servs. v. The Ellerbe Becket Co. Employee Med. Plan, 2007 WL 978089, ** 6-7 (D. Minn. Mar, 28, 2007).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' joint motion for summary judgment as to all counts is **GRANTED**. [Doc. 208]

**IT IS FURTHER ORDERED** that plaintiff Lawrence Chorosevic's motion for summary judgment on Counts I and II of plaintiff's First Amended Complaint is **DENIED**. [Doc. 211]

**IT IS FURTHER ORDERED** that defendants' joint motion to strike portions of plaintiff's statement of undisputed material facts is **DENIED as moot**. [Doc. 217]

An appropriate judgment will accompany this memorandum and order.

**CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE**

Dated this    17th    day of March, 2009.